# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROSA ESTHER PICA ORTIZ,   )  | CASE NO. 1:23-CV-00879-JG |
| )  | |
| Plaintiff,   ) | U.S. DISTRICT JUDGE |
| )  | JAMES S. GWIN |
| v.    )  | |
| )  | U.S. MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL   ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY,   )  | |
| )  | |
| Defendant,   )  | **REPORT AND RECOMMENDATION** |
| )  | |

## I.  INTRODUCTION

Plaintiff Rosa Esther Pica Ortiz ("Ms. Ortiz") seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). (ECF No. 1.) U.S. District Judge James S. Gwin has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to me for preparation of a Report and Recommendation. For the reasons set forth below, I RECOMMEND that the Court VACATE and REMAND the Commissioner's final decision.

## II.  PROCEDURAL HISTORY

Ms. Ortiz filed an application for SSI on November 30, 2020, alleging a disability onset date of January 1, 2020. (Tr. 347.)[1] Her application related to asthma, osteoarthritis, rheumatoid arthritis, sleep apnea, back problems, blood clots in her left leg and lungs, poor circulation, and morbid obesity. (Tr. 82, 423.) Her application was denied initially and upon reconsideration. (Tr.

---

[1] The administrative transcript ("Tr.") appears at ECF No. 5 on CM/ECF.

1

95-100, 121-23.) Due to the COVID-19 pandemic, an administrative law judge ("ALJ") held a telephone hearing on August 2, 2022. (Tr. 22.) Ms. Ortiz, represented by counsel, testified with the assistance of a Spanish interpreter. (Tr. 44-80.) A vocational expert ("VE") also testified at the hearing. (*Id.*) The ALJ issued a written decision on September 7, 2022, finding Ms. Ortiz was not disabled under the meaning of the Social Security Act. (Tr. 22-33.) The ALJ's decision became final on February 28, 2023, when the Appeals Council declined further review. (Tr. 1-8.)

On April 27, 2023, Ms. Ortiz filed her Complaint, challenging the Commissioner's final decision. (ECF No. 1.) Ms. Ortiz asserts the following assignment of error:

> (1) Whether the ALJ's assessment of Monica Seo, M.D.'s medical opinions complied with the Commissioner's revised regulation for evaluating opinion evidence.

(ECF No. 8, PageID#2310.)

### III. BACKGROUND INFORMATION

#### A. Personal, Educational, and Vocational Experience

Ms. Ortiz was born in 1974, and she was 45 years old on the alleged disability onset date. (Tr. 56; *see* Tr. 22.) She has a twelfth-grade education. (Tr. 424.) Her past relevant work was employment as an assembler, garment sorter, and stock checker. (Tr. 32.)

#### B. Relevant Hearing Testimony

##### 1. *Ms. Ortiz's Testimony*

Ms. Ortiz testified that she is disabled due to back pain, knee pain, and difficulty using her hands. (Tr. 59.) She stated that she drops objects and cannot lift more than 5 to 10 pounds. (*Id.*) She underwent brain surgery and was to have another surgery to replace part of her skull. (Tr. 60.) also reported that she can only stand for 10 to 15 minutes, and walking was worse. (Tr. 61.) She has been using a walker for the past year due to dizziness and imbalance. (Tr. 61.) She stopped

driving six or seven months prior to the hearing due to dizziness and back pain. (Tr. 64.) She experiences swelling in her thighs down to her feet, and she needs to elevate her legs for up to 30 minutes every hour due to swelling. (Tr. 64-65.) Her daughter comes to her house to help with household chores, including washing the dishes and sweeping. (Tr. 63.) Ms. Ortiz described her pain as "very distracting." (Tr. 70.)

### 2. *Vocational Expert's Testimony*

The ALJ first asked the VE whether a hypothetical individual could perform work at the light exertional level, if additionally limited to occasionally climbing ramps or stairs, kneeling, crouching, or crawling; never climbing ladders, ropes, or scaffolds; frequently stooping; needing to avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odor, dusts, gases, and poor ventilation; and needing to avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving. (Tr. 72-73.) The VE opined that this individual could perform work as a garment sorter and apparel stock checker. (Tr. 73.)

The ALJ next asked whether an individual with the same limitations from the first hypothetical except limited to the sedentary exertional level could perform work. (Tr. 74.) The VE opined that this individual could perform work as a microfilm document preparer, sack repairer, and final assembler. (*Id.*)

The ALJ asked the VE whether his answers to the first two hypotheticals would change if the individual were also limited to occasionally handling and fingering. (Tr. 75.) The VE opined that this limitation would be work-preclusive. (*Id.*) The ALJ inquired whether the VE's answers to the first two hypotheticals would change if the individual could understand only simple English sentences. (*Id.*) The VE responded only the document preparer job would be eliminated. (*Id.*)

3

The ALJ asked whether an individual could perform work if she would be off task 20% of the workday. (Tr. 76.) The VE opined that this limitation would be work-preclusive. (*Id.*) The ALJ finally asked whether an individual could perform work if she would be absent two times per month on an ongoing basis. (*Id.*) The VE opined that this limitation would be work-preclusive. (*Id.*)

Ms. Ortiz's attorney asked the VE whether the individual from the ALJ's first hypothetical could perform work if she required a rolling walker to stand and walk. (Tr. 76.) The VE opined that this limitation would be work-preclusive. (Tr. 77.) Finally, the VE opined that it would be preclusive of all employment if an individual needed to occasionally elevate their legs at waist height level. (Tr. 78.)

### C. Relevant Non-Medical/Medical Opinion Evidence

#### 1. *State Agency Opinions*

Elizabeth Das, M.D., evaluated the medical record at the initial level of consideration on December 30, 20220. Dr. Das found that Ms. Ortiz could perform work at the light exertional level, except that she could never climb ladders ropes, or scaffolds; occasionally climb ramps r stairs, kneel, crouch, and crawl; frequently stoop; and needed to avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 84-85.)

Lynne Torello reviewed the medical record at the reconsideration level in March 24, 2021. (Tr. 91-93.) Dr. Torello agreed with Dr. Das' findings but further found that Ms. Ortiz needed to avoid all exposure to hazards, *e.g.,* machinery, heights, etc. (*Id.*)

#### 2. *Monica Seo, M.D.*

##### a. Diabetes Questionnaire

4

On February 16, 2022, Dr. Seo completed a checkbox form titled "Diabetes Questionnaire." (Tr. 947.) Dr. Seo indicated that Ms. Ortiz had the following severe impairments: type II diabetes, general malaise, heartburn, diabetic gut symptoms, extremity pain/paresthesia, neuropathy in hands and feet, chronic pain and chronic arthritis, knee swelling, fatigue, and loss of manual dexterity in her hands and fingers. (*Id.*) Dr. Seo also opined that Ms. Ortiz could not work at all during an 8-hour workday, could stand less than 15 minutes at one time, stand/walk less than 1 hour total in an 8-hour workday, sit less than 15 minutes at one time, sit for less than 1 hour total in an 8-hour workday, lift less than 5 pounds occasionally, and lift less than 5 pounds frequently. (*Id.*) Dr. Seo further opined that Ms. Ortiz could never balance and would require an assistive device. (*Id.*) Dr. Seo also stated that Ms. Ortiz would need to elevate her legs to her waist "most of the time" during the workday and would require unscheduled breaks every 10 minutes that last for 25 to 30 minutes at a time. (*Id.*) Dr. Seo also opined that Ms. Ortiz could use her hand, fingers, and arms for grasping, fine manipulation, and reaching for about five minutes. (*Id.*) Dr. Seo stated that Ms. Ortiz would be absent from work due to her symptoms more than four times a month and would likely be off-task 20% of the workday. (Tr. 948.) Dr. Seo wrote, "Due to [Ms. Ortiz's] medical conditions, without improvements over her time of care with me, she is unable to perform sustained work activity." (*Id.*)

### b. Mobility Assistance Device Medical Source Statement

Dr. Seo also completed a "Medical Source Statement – Mobility Assistance Device" on February 16, 2022. (Tr. 949.) On this checkbox form, Dr. Seo indicated that a rollator is medically necessary to aid Ms. Ortiz in walking and/or standing. (*Id.*) Dr. Seo estimated that Ms. Ortiz would be able to stand/walk without a rollator for less than 30 minutes. (*Id.*) Dr. Seo opined that Ms. Ortiz's lower extremity symptoms of reduced strength, paresthesias, numbness, muscle fatigue,

5

muscle weakness, sensory change, and reduced range of motion made a rollator medically necessary. (*Id.*) Dr. Seo opined that Ms. Ortiz would require a rollator for standing, walking, transferring, and balancing. (*Id.*)

### c. Off-Task/Absenteeism Questionnaire

Dr. Seo also completed an "Off-Task/Absenteeism Questionnaire." (Tr. 950.) Dr. Seo opined that Ms. Ortiz would likely be off-task at least 20% of the time due to the following: chronic pain necessitating change in positions and inability to stay on task; inability to sustain focus due to physical symptoms and limitations; pain in her back/spine, knees, arms, legs (sciatica), neck, and hands; and drowsiness. (*Id.*) Dr. Seo additionally opined that Ms. Ortiz would be absent about four times a month due to her impairments or treatment, and that all the limitations have existed since at least January 1, 2020. (*Id.*)

### D. **Relevant Medical Evidence**

Prior to the application filing date, Ms. Ortiz was evaluated by Dr. Seo at a follow-up appointment on July 23, 2020. (Tr. 577.) Ms. Ortiz reported lower extremity swelling and ongoing arthritic symptoms with difficulty walking. (*Id.*) The examination notes indicated that Ms. Ortiz was obese with a Body Mass Index (BMI) of 46 and hypertensive with blood pressure 141/83 mmHG. (*Id.*) The examination did not reveal any other abnormalities. (*Id.*) Dr. Seo advised Ms. Ortiz to wear compression stockings due to her reported lower extremity swelling. (*Id.*) Dr. Seo also deferred to other treatment providers for Ms. Ortiz's other concerns, such as difficulty walking. (*See id.*)

On November 10, 2020, Ms. Ortiz attended a follow-up appointment with Dr. Seo for reevaluation of her right knee pain osteoarthritis. (Tr. 549.) Examination revealed antalgic gait, mild effusion with medial joint line tenderness, pain with varus stress, and moderate crepitus. (Tr.

500.) X-rays showed bilateral degenerative joint disease, mild on the right and moderate on the left. (Tr. 551, 667-69.)

On December 10, 2020, Ms. Ortiz went to the emergency department for chest pain. (Tr. 535.) Prior to presenting to the emergency department, an ultrasound was positive for deep vein thrombosis in her left lower extremity. (Tr. 535, 540.) Ms. Ortiz was assessed with pulmonary embolism and started on Eliquis. (Tr. 538.)

On January 12, 2021, Ms. Elizabeth Rospert, APRN, CNP, noted that Ms. Ortiz's diabetes was poorly controlled, but she declined starting medications. (Tr. 848.) On January 14, 2021, Ms. Kelly Kuenzle, CNP, treated Ms. Ortiz for shortness of breath and a follow-up on her asthma. (Tr. 836.) Ms. Kunezle diagnosed Ms. Ortiz with moderate persistent asthma, upper airway cough syndrome, and morbid obesity. (*Id.*) On March 11, 2021, Ms. Ortiz requested a new shower chair because her current chair was not supporting her weight, and as a result she had fallen out of the chair several times. (Tr. 909.)

Dr. Seo evaluated Ms. Ortiz on June 1, 2021. (Tr. 928.) Ms. Ortiz reported pain "all over" but stated that her blood sugar was controlled. (*Id.*) Ms. Ortiz was using a wheeled walker with a seat and had to get up several times during the visit. (*Id.*) Upon examination, Dr. Seo observed that Ms. Ortiz was obese, but her blood pressure had improved to 120/72 mmHG. (Tr. 929-30.) The examination had otherwise normal findings. (*Id.*) On August 26, 2021, Ms. Ortiz presented to Dr. Seo with an umbilical lump/mass, which was suspected to be a hernia. (Tr. 941.) Dr. Seo referred Ms. Ortiz to a general surgeon. (*Id.*)

On February 22, 2022, Mr. Nathaniel Clapp, PA-C, treated Ms. Ortiz for neck pain radiating to her shoulder and down her arm with a burning sensation. (Tr. 953.) The examination findings revealed that Ms. Ortiz had normal gait and did not have trouble getting onto the

7

examination table. (Tr. 955.) PA-C Clapp reported that Ms. Ortiz was irritable with range of motion testing, demonstrated diffuse neck and shoulder tenderness, and reported pain with resisted strength testing. (Tr. 955-56.) PAC-C Clapp found that Ms. Ortiz did not appear to give full effort when she was asked to resist with her full strength. (Tr. 956.) She had significant pain with cervical spine flexion, extension, and lateral bending. (*Id.*) That did reproduce some of her shoulder pain as well. (*Id.*) There was significant tenderness to palpation of the cervical spine and paraspinous muscles in the right. (*Id.*) PA-C Clapp opined that the "descriptors of [Ms. Ortiz's] pain are indicative of impinged nerves in the spine." (*Id.*) PA-C Clapp diagnosed Ms. Ortiz with cervicalgia, prescribed a short course of muscle relaxers, and referred her to a spine center. (*Id.*)

X-rays of the right shoulder on February 22, 2022, showed mild degenerative changes of the acromioclavicular joint. (Tr. 958.) On March 7, 2022, Ms. Ortiz went to the emergency department for left leg pain and swelling. (Tr. 1266.) There was no loss of motor or sensory function. (*Id.*) Ms. Ortiz was diagnosed with deep venous thrombosis and hospitalized for IV heparin and further workup and evaluation. (Tr. 1271.) She was discharged from the hospital on March 10, 2022. (Tr. 1329.)

On May 23, 2022, Ms. Ortiz returned to the emergency department with swelling and pain in her upper right leg. (Tr. 1551.) An ultrasound revealed evidence for acute occlusive deep vein thrombosis within the right common femoral, superficial femoral, and popliteal veins along with occlusive thrombus within the right greater saphenous vein. (Tr. 1536.) Providers started Ms. Ortiz on a high intensity heparin drip. (Tr. 1565.) Ms. Ortiz was discharged a few days later. (*Id.*)

## IV. THE ALJ'S DECISION

The ALJ first determined that Ms. Ortiz had not engaged in substantial gainful activity since November 30, 2020, the application filing date. (Tr. 24.) The ALJ then determined that Ms.

Ortiz has the following severe impairments: osteoarthritis, mild degenerative disc disease of the lumbar and thoracic spine, obesity, other diseases of the circulatory system, asthma, and sleep-related breathing disorders, and a subdural hematoma. (Tr. 24-25.) However, the ALJ determined that none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 25-26.)

The ALJ determined that prior to April 12, 2022 (the alleged disability onset date), Ms. Ortiz could work at the light exertional level, except that she could occasionally climb ramps or stairs, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dust, gases, and poor ventilation; and must avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving. (Tr. 26-30.)

The ALJ then determined that beginning April 12, 2022, Ms. Ortiz had the RFC to perform work at the sedentary exertional level, except that she could occasionally climb ramps or stairs, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; could frequently stoop; needed to avoid concentrated exposure to extreme cold, extreme heat, humidity fumes, odors, dust, gases and poor ventilation; needed to avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving; and would be off-task 20% of the workday due to pain and balance issues. (Tr. 30-31.)

The ALJ determined that Ms. Ortiz has no past relevant work. (Tr. 31.) The ALJ further determined that transferability of job skills is not an issue because Ms. Ortiz does not have past relevant work. (Tr. 32.) The ALJ found that prior to April 12, 2022, there were jobs that existed in significant numbers in the national economy that Ms. Ortiz could have performed such as employment as a small parts assembler, garment sorter, and apparel stock checker. (Tr. 32-33.)

Beginning on April 12, 2022, the ALJ found there are no jobs that exist in significant numbers in the national economy that Ms. Ortiz can perform. (Tr. 33.)

Accordingly, the ALJ concluded that Ms. Ortiz was not disabled prior to April 12, 2022, but she became disabled on that date and has continued to be disabled through the date of the ALJ's decision. (*Id.*)

V. **LAW AND ANALYSIS**

A. **Standard of Review**

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal

standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

## B. Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r*

11

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

      C. **Substantial evidence does not support the ALJ's evaluation of Dr. Seo's medical opinions.**

Ms. Ortiz argues that the ALJ erred in evaluating the opinions of Dr. Seo. (ECF No. 8. PageID#2310-15.) Specifically, she contends that the ALJ failed to adequately explain his findings regarding the supportability, consistency, and persuasiveness of Dr. Seo's opinion. (*Id.*) The Commissioner disagrees. (ECF No. 9, PageID#2324-30.) For the following reasons, I find that the ALJ did not properly evaluate Dr. Seo's medical opinion in accordance with agency regulations.

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. See 20 C.F.R. § 404.1520(c)(1)-(2).

The ALJ assessed Dr. Seo's opinion as follows:

12

> [Dr. Seo's] opinion was not persuasive because it was not supported by or consistent with the records prior to the established onset date. Dr. Seo is the claimant's primary care physician and saw the claimant on a regular basis. Dr. Seo diagnosed the claimant with moderate persistent asthma not well controlled, upper airway cough syndrome, morbid obesity, unprovoked deep vein thrombosis and pulmonary embolism, and obstructive sleep apnea (Ex. 5F/4). On February 22, 2022, the claimant treated with Nathanial Clapp, PA-C for neck pain that began in November and radiated to the shoulder and down the arm with a burning sensation (Ex. 7F/2). She complained of pain in the right shoulder. Examination findings showed that the claimant did not have trouble getting onto the examination table (Ex. 7F/4). There was irritability with rotation of motion of the right shoulder. There was diffuse tenderness through the shoulder muscles (Ex. 7F/5). She did not appear to give full effort when asking her to resist with her full strength. She had significant pain with cervical spine flexion, extension, and lateral bending. Examination did reproduce some of her shoulder pain as well. There was significant tenderness to palpation of the cervical spine and paraspinous muscles on the right. Mr. Clapp diagnosed the claimant with cervicalgia. He prescribed a short course of muscle relaxers. Therefore, Dr. Seo's opinion appears to be based upon the claimant's subjective complaints and not examination findings.

(Tr. 30.)

Here, the ALJ failed to provide sufficient rationale for the consistency of Dr. Seo's opinion. Although the ALJ identified some findings that, in his opinion, were inconsistent with Dr. Seo's opinion, the ALJ does not explain *how* these findings were inconsistent. For example, in Dr. Seo's "Absenteeism/Off-Task Questionnaire," Dr. Seo cited Ms. Ortiz's symptoms of chronic pain necessitating change in positions and inability to stay on task; inability to sustain focus due to physical symptoms and limitations; pain in her back/spine, knees, arms, legs, neck, and hands; and drowsiness as reasons for why Ms. Ortiz is likely to be off task. (Tr. 950.) As Ms. Ortiz correctly argues, the treatment notes from PA Clapp that the ALJ used to discount Dr. Seo's opinion are generally consistent with Dr. Seo's opinion. Specifically, PA Clapp observed neck, shoulder, and arm pain with paresthesia; tenderness with range of motion in the right shoulder; muscle tenderness through the shoulder muscles; significant pain with cervical range of motion in all planes; and

13

significant tenderness to palpation of the cervical spine and paraspinous muscles. (Tr. 30; *see* Tr. 953-36.) Thus, the ALJ's conclusion that "Dr. Seo's opinion appears to be based upon [Ms. Ortiz's] subjective complaints and not examination findings" is not supported by the record. (Tr. 30.)

Further, the ALJ does not explain why some of his cited evidence necessarily discounts Dr. Seo's opinions. For example, the ALJ cites Ms. Ortiz's ability to get on the examination table at her session with PA-C Clapp as a basis to discount Dr. Seo's opinions. (Tr. 30.) But an observed difficulty, or lack thereof, getting on the examination table was not a listed basis for Dr. Seo's opinions. (Tr. 947-50.) Moreover, it is unclear how the ability to get on an examination table addresses some of the ALJ's opined limitations, such as Ms. Ortiz's manipulative limitations or ability to sit and stand. Thus, as Ms. Ortiz contends (ECF No. 10, PageID#2332-33), this evidence does not indicate an inconsistency between Dr. Seo's opinions and PA-C Clapp's examination notes.

The Commissioner argues that the ALJ found Dr. Seo's opinions unpersuasive because they were "not supported by or consistent with the records prior to the established onset date." (Tr. 30.) The Commissioner then asserts that the ALJ "had already evaluated the medical evidence overall when determining that [Ms. Ortiz's] allegations regarding the intensity, persistence, and limiting effects of her impairments were not fully substantiated prior to April 12, 2022." (ECF No. 9, PageID#2326-27 (citing Tr. 26-29)). The Commissioner discusses the evidence and concludes that: (1) the medical records from Dr. Seo did not include diagnoses matching those listed in her opinions or medical signs "reasonably corroborative" of the assessed limitations; and (2) PA-C Clapp's examination did not yield abnormal medical signs or diagnoses commensurate with Dr. Seo's opinions. (*Id.* at PageID#2326-28 (citing Tr.941, 947, 949, 950, 953-56)). Because Ms. Ortiz

does not address these inconsistencies, the Commissioner contends that Ms. Ortiz's argument lacks merit.

While the Commissioner's argument is plausible on its face, the fact remains that the ALJ's general statements offer no clear explanation that would allow me to reach the Commissioner's conclusion. Specifically, the ALJ fails to explain *how* some of PA-C Clapp's findings render Dr. Seo's opinion inconsistent. Agency actions "must be upheld…on the basis articulated by the agency itself[.]" *Foltz ex rel. R.B.K.F. v. Comm'r of Soc. Sec.*, No. 23-3362, 2023 WL 7391701, at *4 (6th Cir. Nov. 8, 2023) (internal citation omitted). "[A]rguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's 'post hoc rationale' that is under the Court's consideration." *Blackburn v. Colvin*, No. 5:12CV2355, 2013 WL 3967282, at *8 (N.D. Ohio July 31, 2013) (internal citations omitted) (brackets in original). Furthermore, as set forth above, many of PA-C Clapp's findings are consistent – rather than inconsistent – with Dr. Seo's opinion, such as neck, shoulder, and arm pain with paresthesia; tenderness with ROM in the right shoulder; muscle tenderness through the shoulder muscles; significant pain with cervical ROM in all planes; and significant tenderness to palpation of the cervical spine and paraspinous muscles. (TR 30, 953-56.)

As Ms. Ortiz correctly notes, these are some of the same signs and symptoms that Dr. Seo included to support her opinions. As a result, the ALJ's conclusion that "Dr. Seo's opinion appears to be based upon the claimant's subjective complaints and not examination findings" does not make sense. "Because the ALJ's summary of evidence includes both supportive and contradictory information, it does little to explain the ALJ's reasoning or to provide sufficient rationale for the reviewing court." *Melton v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-2193-BYP, 2022 WL 18358789, at *9 (N.D. Ohio Oct. 13, 2022), *report and recommendation adopted sub nom. Melton*

15

*v. Kijakazi*, 2022 WL 17985681 (N.D. Ohio Dec. 29, 2022). Without sufficient articulation from the ALJ, this reviewing court cannot meaningfully review the decision to determine whether it is supported by substantial evidence.

Finally, the ALJ's failure to address the supportability of Dr. Seo's opinion is harmless error because Dr. Seo's opinions are checkbox forms that lack meaningful explanation in support of her conclusion and fail to reference or incorporate records and objective findings to permit a reviewing party to provide a more thorough assessment of the opinion. Ms. Ortiz does not dispute in her reply that Dr. Seo's opinions are checkbox forms. (ECF No. 10, PageID#2333.) Rather, Ms. Ortiz argues that the ALJ did not view Dr. Seo's opinions as insufficient due to their format, and the Commissioner's argument in this regard is *post hoc* rationalization. (*Id.*)

But the Sixth Circuit has held that a checkbox opinion without explanation is "patently deficient." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (finding that these types of opinions are "'weak evidence at best' and meets [the Sixth Circuit's] patently deficient standard") (citation omitted). Significantly, [e]ven when the ALJ does not "expressly cite the unsupported checkbox form as a basis" for rejecting an opinion, a checkbox form may be inherently deficient. *Gallagher v. Berryhill*, No. 5:16-cv-01831, 2017 WL 2791106, at *9 (N.D. Ohio June 12, 2017) (citing *Hernandez*), *report and recommendation adopted*, 2017 WL 2791106 (N.D. Ohio June 27, 2017); *see Hunt v. Comm'r of Soc. Sec.*, No. 1:21-CV-00075-DAR, 2022 WL 4599246, at *3 (N.D. Ohio Sept. 29, 2022) (finding checkbox opinion was inherently deficient even when ALJ did not cite checkbox form as basis); *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018) (finding checkbox opinion "even when the ALJ did not specifically call attention to it in the decision").

Nor do the limited explanations offered by Dr. Seo convert the checkbox form-nature of Dr. Seo's opinions. *See Duke v. Comm'r of Soc. Sec.*, No. 21-CV-29, 2022 WL 1075171, at *4 (N.D. Ohio Apr. 11, 2022) (finding that medical source's form was a check box form where the form included check boxes and listed claimant's asthma and POTS diagnoses; described treatment as "medications; listed symptoms; and stated that the medical findings were a "fast heart rate and low blood pressure"); *Kreilach v. Comm'r of Soc. Sec.*, 621 F.Supp.3d 836, 848 (N.D. Ohio Aug. 15, 2022) (finding that medical source's questionnaires were check box forms where the medical sources "checked boxes and wrote cursory statements about the supporting clinical findings and [p]laintiff's prognosis"); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding ALJ articulation error harmless where the opinion consisted of a checkbox worksheet lacking any explanation beyond a diagnosis). Accordingly, Ms. Ortiz's argument that the ALJ erred in her articulation of the supportability of Dr. Seo's opinions is without merit.

In sum, I conclude that the ALJ committed harmless error when he failed to articulate the supportability factor because Dr. Seo's opinions are mere checkbox forms. The ALJ erred, however, in articulating the consistency factor because he does not sufficiently explain how Dr. Seo's opinions were inconsistent with other evidence in the record. Accordingly, I recommend that the Court vacate and remand the Commissioner's final decision for an ALJ to adequately consider and explain the persuasiveness of Dr. Seo's opinions.

## VI. RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court VACATE AND REMAND the Commissioner's final decision.

Dated: March 13, 2024

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII. NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).